20-1932 Baker Hughes Oilfield v. Hirshfeld Ms. Cameron, please proceed as nurse you're ready. Good morning, your honors. May it please the court. My name is Kyrie Cameron, and along with John Barr, we represent Baker Hughes. There are two issues before the court this morning. First is the board's determination that Inovex's obviousness challenge was deficient. And second is the board's construction of tool as a means plus function term. Turning first to the procedural issue. At institution, the board was firm and unequivocal in its decision that Inovex's obviousness challenge was deficient, that it did not meet the pleading requirements. That decision should have been final. Specifically, at appendix pages 364 through 366, the board said, and I quote, it was unclear how the teaching of each particular combination of references were mapped to the tool limitation. Petitioner loved it. Counsel, is it your position that, you know, when the board in its institution decision makes some sort of statement about the petition, that then it's bound by that? It can't later look at, after it looks at the references and considers the case more, make a determination when it does in fact institute on those grounds, that it thinks actually, you know, looking at it again and knowing the art, it actually is clear. And rule on those grounds, particularly where the petitioner in fact has argument and even the patent owner has some argument in their briefing on it. Not when they do so without notice. Now, we do think that because the board's statement regarding deficiency was related to the pleading requirements and that the pleadings are final at the time that the board makes its institution decision, we do think that that deficiency determination at that point has some finality. But we recognize that there have been instances in which the board has later clarified its understanding and has taken a different position but has given notice to the parties of that. In fact, the director hasn't cited a single case in which the board made an unequivocal determination that grounds were deficient and then later, at the final written decision, found that those grounds were not only sufficient but met a preponderance of the evidence standard. Ms. Cameron, I'm not sure I'm following. Maybe I'm just not clear on what the record is here. But your preliminary response specifically broke out the petitioner's combinations into two anticipation grounds and six obviousness grounds, right? That's correct, Your Honor. And the institution decision also broke these out, right? That's correct, Your Honor. And the institution decision said it was instituting on all of them as it must under SAS. So why weren't you on notice of what the obviousness combinations were? Well, respectfully, Your Honor, because it was Baker Hughes and the board who had to sift through the arguments and try and put any semblance into an organization of what the obviousness challenges were really. The petitioner presented those obviousness grounds as one lumped together obviousness challenge with five references that could be used in what Baker Hughes thought to be six combinations potentially. But what the board said and what this court knows is that while SAS did look at Statute 318 and say that it requires institution to be an all-or-nothing decision, it did not eradicate the pleading requirements incumbent upon petitioners to inter partes review proceedings. If this court found that the board could make a statement about deficiency and find that the grounds— I thought we were talking about notice, just the notice portion of it. And if your response and what the board said gave you notice of all these combinations, I'm not sure what your notice requirement is, your notice argument. Our argument is really twofold, Your Honor. The first point of our argument is that a deficiency determination under the pleading standards at that snapshot in time when the pleadings are all that's before the board should be final. But our second point is— But SAS made it clear it's not final because SAS has made it clear that the board is forced to institute on everything. So how do we get around the Supreme Court? You're exactly right, Your Honor, that SAS did make institution an all-or-nothing decision based on the court's interpretation of Section 318. But what SAS did not do is say that the pleading requirements for inter partes review petitions were eradicated. In fact, the Supreme Court cited 35 U.S.C. 312, which lists the pleading requirements several times in the SAS decision. So SAS, while it made institution an all-or-nothing decision, did not say that grounds that are deficient at pleading can then later not be deficient at the final written decision when we know that you can't make your prima facie case in your subsequent briefing and inter partes review proceedings. Compliance with 312 is not subject to judicial review. That's correct, and we are not challenging the decision under 312. What we're here before this court to say is that when the board found under 312 that the grounds were deficient, that should have been final. The parties, especially Baker Hughes, relied on the board's unequivocal determination— No, when you didn't rely on it, you then spoke to those combinations in your subsequent pleadings. And you shouldn't have relied on it, because while the board said there were deficiencies in the way it was argued, it went on to say it was nonetheless instituting on those specific grounds and it enumerated them. And then your response actually responded to those grounds. Didn't your briefing respond to those grounds? Well, respectfully, Your Honor, our briefing responded to those grounds and emphasized the procedural failures under the pleading requirements and confirmed what the board had found and elaborated on what the board had found, that the petitioner had not put forward those grounds with any particularity. They had not said how specific combinations of references— Didn't you also make substantive arguments with regard to those grounds? We made substantive arguments in the sense that we relied on the same substantive grounds that related to the references that were also being used in Petitioner's anticipation challenge and at times addressed the combinations generally but mostly relied upon the board's determination that procedurally Petitioner had failed. And Baker Hughes did so reasonably. The Patent Trial and Appeal Board's own guidance says that the words they use in their institution decision should be relied on by the parties to govern how they address the grounds in their briefing and throughout the proceedings. So what is your argument precisely? Is your argument that they should have never gone there at all or is your argument that, yeah, you did kind of address them but since you weren't sure whether you needed to, you didn't have a fulsome opportunity to address them? Where are we going with this? Our argument is twofold, Your Honor. It's first that because the board found them to be deficient and SAS didn't change the pleading requirements, that the board should not then have substantively reviewed those grounds. But where do we have the authority to review that determination? You're saying that we should say, Ford, you shouldn't have instituted on this or you maybe had to institute but you shouldn't have decided these and you should have just dismissed them. I think that's precisely the point, Your Honor, that we're not challenging the decision itself. We're asking this court to hold the board accountable to its words. The board didn't have to say that Petitioner's obviousness challenge was deficient. Well, but the board is always permitted. It's never bound by what it says in an institution decision. It's always permitted upon further briefing to change its mind about what it held in the institution decision. So you would like some rule that holds them bound  That has never been the case. And that's not what we're asking this court to do. What we're asking this court to say is that at a minimum, if the board is going to take an inconsistent position, a wholly inconsistent position, later in the proceeding, that it give the parties notice as it's required to do under the Administrative Procedure Act and under due process. Well, arguably, the board took that very inconsistent position in the document itself in the institution decision because while they say it's unclear how to understand Petitioner's specific arguments, it says despite the deficiency in Petitioner's obviousness showing for the claims we institute, one claims 1 through 23 as obvious based on head and view, head and home, star and view, star and home, stout and view, stout and homes. It goes through every single one of them and says, even though there's got some deficiencies, we're still instituting on all of these. So why didn't that put you on notice? Well, we know that the board had to institute all grounds under SAS, but that didn't mean that the board was thereby putting Baker Hughes on notice that when it found grounds to be deficient under a likelihood of success standard at institution, that it was going to take a wholly inconsistent position and find those grounds to not only be sufficient under likelihood of success, but to meet a preponderance of the evidence standard. At a minimum, all we're asking this court to say is that the board should have given the parties notice, but it didn't, and it was not for lack of effort on Baker Hughes' part to get that clarification. Do you have any cases that you can point to that you can analogize between the facts of this case and those cases where we tell that what the board did in the institution decision and then when they did something different in the final decision, it wasn't sufficient notice? Do you have any particular cases that you think strongly support what you're asking for? Frankly, Your Honor, no. We looked hard to see if there were any cases that were postured like this one where at institution the board made an unequivocal statement that the pleading of certain grounds was deficient and then found those grounds to not be deficient and to meet the preponderance of the evidence standard in their final written decision. We do have several cases that have been before this court where this court has said that the petition is what it is, that you cannot make your prima facie case later on in the pleadings. Now, to be clear and to be fair and frank with this court, this morning the director, a couple of hours ago, sent over one case that it has identified post-briefing where the PTAB in the institution decision found that one element of one anticipation reference was not met and then in the final written decision found that that element of the claims was satisfied. But that's a wholly different case than the case before this court. The PTAB in that case did not say these grounds are deficient, we can't even sort through them and make out what their combinations and proof of those combinations is. They didn't say any of that. Can I ask a procedural question? I have absolutely no idea what you're talking about. Was something submitted to the court? This morning the director served by e-mail on F.S. Baker Hughes' counsel an additional PTAB proceeding that it identified. To your knowledge, was this provided to the court? I'm not sure, Your Honor. Because I'm not aware of it and I just pinged my clerk and he said this is news to him, he doesn't see any 28-J letters that have been filed. So, okay, I'm sorry, please proceed. Could I ask you a question about claim construction quickly before your time runs out? Absolutely. I would like to know, how does your interpretation of tool impact either the anticipation or obviousness issues in this case? Your interpretation looks pretty broad. I'm just having a hard time understanding how your proposed interpretation would alter the result. Sure. So our interpretation of the claim term tool is supported by not only the specification... That's not my question. My question is, you know, if you offer, you know, you ask us to review a claim construction, it has to actually have meaning in the case in which it's argued. And so how does your... For example, if we were to adopt your claim construction, how would that impact the obviousness and anticipation issues before the board? Claims 1 through 23 would therefore be patentable if this court agreed with our construction. Why? That's because the experts in this case uniquely agreed that tool has a meaning to persons of ordinary skill in the art. The director takes issue with the fact that they were talking about downhill tool and the word downhole is not before the word tool in our claim, but that ignores Markman v. Westview, which says we can't read the claims in a vacuum. But both experts agree that downhill tool has a meaning to persons of ordinary skill in the art. And your proper construction has the word downhill tool and it's your position the prior art doesn't teach a downhill tool. That's correct. And to be clear, even petitioners expert in the IPR agreed that the prior art references that have been cited do not teach tools as would be understood by persons of ordinary skill in the art using that plain and ordinary meaning. Okay, thank you, counsel. Let's save the rest of your time for rebuttal. Thank you. Let's hear from Ms. Joyers. Thank you. May it please the court, Peter Ayers on behalf of the office, acting director Andrew Hirschfeld. Let me first address your point, your honor, about the little 27J letter. Obviously, these facts are somewhat unique in this case and Baker Hughes had asked for a case, an example where the board had changed positions, found something deficient in the institution. What do you mean they had asked for a case in their briefing? Well, to identify a case where this particular circumstance had occurred, where the board had said something was deficient at institution and then found it's nonetheless unpatentable on the higher standard at final written decision and it was literally just through my research that I found a case from the board where, as the counselor points out, that the board instituted on an anticipation ground even though it found an element missing, but then in the final written decision found it. No, no, but I think what Chief Judge Warren and I, too, was confused about is did you submit that to the court? I did not, your honor. So you just gave it to the other side for... Yes, I did not have an opportunity this morning to either print it out and bring it here personally and I won't refer to that case and rely on it. I just passed it along to counsel in the case that that issue did come up. So my apologies. I'll be happy to file a Rule 27J letter with that case site. 28J letter. 28J letter, sorry. So with that, let me address both, the two issues that are before you. Well, can I start off by asking you a question about the discussion we were having with your friend? Yes. And I understand you made clear you've got to institute this no matter what under SAS, and that may have been enough to put them on notice, but there's one statement that the board made in its institution decision that I'm kind of confused by. It says, quote, Petitioner is essentially inviting us to sift through its arguments and evidence in order to piece together its best arguments for each of the proposed combinations of references, which we declined to do. So the board was declining to sift through the arguments and come up with anything, but it was expecting the patent owner to do that? I mean, wasn't the patent owner in essence required to do what the board itself said it was declining to do? Yes, Your Honor. I think you have to step back and look at the patent owner's preliminary response to put that board statement in context. The patent owner had argued in its preliminary response that the board should not institute because the grounds that were presented were both horizontally and vertically redundant, and so they well understood the specific combinations, as you pointed out. They listed them explicitly in their preliminary patent owner response and then argued that there's really no distinction between them and the petitioner doesn't make any distinction between one combination or another, and the board shouldn't have to go through in its institution decision and sort through which is the best argument of the six. So there was never any question about whether or not the patent owner understood the combinations and the issues that were presented by those combinations, and that's really the critical question, as this court has said, that compliance with the APA in due process is whether a party received adequate notice of the issues that would be considered and ultimately resolved at the hearing. That's Genzyme. I don't understand your response to Judge Prost. I'm on the patent owner's response. I'm on appendix page 312. This is their preliminary response that you just referred to. I'm on page 312 of the appendix, and their entire analysis with regard to the eight obvious mischallenges seems quite clearly that these... I'll just read from it. You know, redundant challenges are those that assert different references against the same claims and between which a petitioner has made no distinctions. These include challenges in which different sets of references are applied to the same claims as distinct and separate alternatives. Such challenges are horizontally redundant, absent an explanation as to why one reference more closely satisfies a claim limitation in some respect than the other references. What they're complaining about is exactly what the board found, which is the petition just alleged eight possible combinations without ever explaining in any detail how you could find particular elements satisfied by any of the particular references. It was just like I said, hey, this is obvious in this, in light of this, that, and other thing, without any analysis whatsoever as to how those particular references read on particular claim limitations. So I understand their response not to just be these are redundant, but rather they're redundant in that all eight of them just make blanket assertions with no level of detail that allows us to understand and respond to how these combinations specifically read on the claims. And that's what I understood the board to pretty much agree exactly with, especially in the sentence Judge Prost read about petitioners essentially inviting us to sift through its arguments and piece together arguments for each of these combinations. Because the petitioner didn't do it themselves. And the board said we declined to do so. So I'm in the same place Judge Prost is. I really want to know from you why in the world the patent owner should have been on notice that it had to do exactly what the board declined to do, which it had itself argued to the board the board should decline to do because there was no specificity in the arguments that's made in the petition. Why should the patent owner have known it was required thereafter to give that degree of specificity that the petition itself did not provide? A couple of responses, Your Honor. First, I think it's important to understand that the petition's obviousness ground built upon the two anticipation grounds. So clearly, and there's no dispute, that the mapping of the claims 1, 7 through 23 were specific enough with respect to both Head and Stalk. The only new primary reference that was introduced in the obviousness ground was Stout. And there, too, they acknowledged the structural elements that the claims were mapped to. So I think, again, if you look at their preliminary response and their patent owner response, they clearly were on notice of how the claims were mapped to that third primary reference. The only question, then, is how were those secondary references used? And, again, they were quite clear in their preliminary patent owner response this is their quote from them, Zoo and Holmes... Okay, turn it on, can you please turn it on? Oh, 318. Zoo and Holmes, which were the two primary references, are each relied on as disclosing the claim dis-synergable material. Those are the specific limitations presented just in the D pending claims 2 through 6. And with respect to Zoo in particular... Okay, so now you're suggesting, contrary to the board's own institution decision, that the petition itself was crystal clear and absolutely put the patentee on notice. And so as you stand here today, are you saying that everything the board said about the deficiencies it found in the petition in terms of whether it or a patent owner could understand exactly how those eight obviousness combinations could come together to render the claims obvious? Are you now, as you stand here today representing the agency, saying the board was completely wrong when it reached that conclusion? Because your personal review of the documents demonstrates that it was discernible. No, Your Honor. I think different minds could come to different conclusions about the specificity of the obviousness grounds, and we're not endorsing what the petitioner did in this case of combining six combinations in a single ground. It certainly would have been better for them to break those out individually. But I don't think it is improper for the board to criticize the petition and thereby perhaps even focus the trial even more on the issues in that, which is, I think, what the petitioner did in reply. They came back and... Do you read the institution decision as focusing the patentee more clearly on the obviousness... No, I think... ...combinations? Do you read this decision as giving them notice that this is exactly what they should be focusing on? No, not at all, Your Honor. Focusing... Don't you think it's fair to say, if anything, it gave them reason to believe they didn't need to focus on these? See, I don't, Your Honor, for the points that have already been made, given the language in the institution that says, despite these deficiencies, we're instituting, and that any... Why did they say, despite these deficiencies, we're instituting, and then there's a footnote to Sass that says, because we don't have a choice? Right. And so I think it... And I'm not... I guess here's what it comes down to for me, Mr. Ares. What it comes down to for me is not that the board necessarily got any of this wrong, but at a minimum, wouldn't it be fairer to a patent owner, after the board in an institution decision says, as alleged in the petition, this thing is completely deficient. We have no choice but to institute on everything because of Sass, but doesn't that convey to the average person that they don't need to worry about those grounds necessarily, and they should focus all of their energy on the other things? And if the board at some point changes its mind, wouldn't you, if you were the patentee, wouldn't you like a heads up about that? I mean, wouldn't it seem like that would be a better way for this to work, is that the board would then say, you know, we said all that stuff about it being deficient, and we may have given you the impression we'll have to look at it, but now that the situation's evolved, we're starting to see these combinations and how they come together. I mean, what is the harm in instituting into this process the obligation on the board when it has said something as strong as it did in this institution decision to follow up with notice to the advocate on the other side if it has changed its mind? I guess I would, first of all, disagree that the board changed its mind. It did institute on these specific grounds. Agree they did criticize the petition's presentation, and to the extent that, you know, there was any concern about the clarity of those grounds, I think the burden is on the petitioner to come forward and clarify those, which they did. And the limit on that, though, and this court has made clear, is that you can't introduce new issues or new evidence, and they did not. They just clarified, they marched through what they had originally presented in their petition. So I... So at some point, there wasn't... I mean, they filed a response, there was a surreply here, and I guess there was a fairly robust oral argument which discussed some of these issues. So you're saying, even if the process maybe was confusing at the beginning, it was cured? Yes, I think that's fair. I think that's fair, Your Honor. And this court, you know, made clear in Wasika Continental, 853 F. 3rd 1286, there's nothing improper about a petitioner, quote, explaining how the original petition was correct. And we believe that's what happened... But you understand, as I understand the other side's argument, which was effectively clarified this morning, they're not saying, obviously, under SAS, they're not saying that because we know that the board wasn't going to institute on these and SAS made them do it, we can ignore all of that stuff because we know they don't think that's worthy. That's not this argument. Their argument is that when the board sort of is a pleading decision, says it wasn't led correctly, that they can rely on. Isn't that... Whether the distinction is outcome determinative in this case, that's an important distinction, is it not? We agree that that is part of the totality of the circumstances that go into the adequate notice of the issues joined. But I think you have to look at the institution decision itself. You have to look at the course of the conduct in these cases. As Jen Sein makes clear, this court pointed to the fact that the patent owner itself identified certain prior art references that the board relied on. So you can look to the actions of the parties to determine whether or not the party had adequate notice and an opportunity to respond. And we believe that they did in this case. If you'd like, with my remaining time, I only have 15 seconds, I'm happy to answer any questions about the claim construction issue. But those two are independent and the process argument only really affects the six, which are obviousness only, that the board, or to the extent this court affirms that claim construction, it can affirm the anticipation of one, claims one, seven through 23, regardless. Okay, thank you, Mr. Eric. Thank you. Mr. Cameron, we'll restore two minutes of rebuttal time, please. Thank you. Thank you, Your Honors. Just briefly on rebuttal, I think it's important for this court to note that the mapping that the director spoke of in its argument happened in the petitioner's reply brief. In response to that reply brief, Baker Hughes again asked the board that if it was going to consider what those obviousness challenges that it found to be deficient, even after Baker Hughes did petitioner's work for it, that they give the parties notice it was going to do so. Specifically in Baker Hughes' reply at appendix 649 after that mapping was done. The board did not come back after that and change... Just a moment, 649. Yes, Your Honor. Okay, that's what you said. And what did the board say in response? The board never replied to that request in Baker Hughes' reply. Again, the petitioner... I'm sorry. Again, Baker Hughes asked the board whether it was going to consider the obviousness grounds that it found to be deficient before the oral hearing. Hold on for a sec. So you're at page 649. I see where you say, should the board nevertheless choose to entertain petitioner's move, stout view our theory, Pat and I request the opportunity to address it, including new evidence that was not permitted in a surreply. So if this had been flushed out... I agree with you that their reply flushes it out in a way that their petition never did. So are you saying then that you made the argument very clearly preserved to the board that if you're going to consider these new flushed-out arguments, we not only want a chance to respond to them, because it seems like a surreply gives you a chance to respond, right? But that we want a chance to introduce evidence, which we could have done if this had been in the petition in the beginning. That's correct, Your Honor. We could have had our expert more clearly understand and expound about the particular references and particular combinations that were first introduced in the petitioner's reply. But we didn't have the opportunity to do that in our surreply where surreply evidence wasn't permitted. Because you get that a surreply does give you a chance to respond, right? So you are having an opportunity to make arguments, maybe not as fulsome as you'd like given page limit requirements and otherwise, but you're saying you would have introduced additional evidence. We would have liked the opportunity to do so, Your Honor. Just to clarify, I'm not as familiar with the record as you are. Is the petitioner's new stout zoo theory, was that one that was embraced by the board at the end? Embraced by the board in its final written decision, Your Honor? Yes, it was, Your Honor. And when you say new evidence, are you talking about expert testimony? What specifically? I mean, it can be with generality, but what are you referring to? Certainly, we would have liked the opportunity to have our expert offer opinions about those particular new mappings that were offered by the petitioner and any other evidence. There's definitely a lot of evidence in the art that may have shown why these combinations were not susceptible to being combined, why it wouldn't be obvious to a person of ordinary skill in the art to do that, but we didn't have that chance. And we relied on what the board stated unequivocally that it didn't have to state, that the grounds were deficient. As this court recognized just in July in Qualcomm v. Intel, patent owners are afforded a limited number of words and a limited number of times to protect their patent rights from being stripped away. In this case, Baker Hughes had no notice that those rights would potentially be stripped away on grounds that were not sufficiently pled at the pleading requirement. Thank you, Your Honor. I just want to clarify, because I'm looking at the beginning. I mean, you're making a lot of arguments, and the main argument is really the argument you made earlier today that they shouldn't be doing this in reply. What you're arguing now is different than that, right? That even if they did it in reply, there was stuff that we should have had the right to introduce new evidence. That's only found in that one sentence that Chief Judge Moore pointed out, right? That's correct. We do think that the board erred first, and when they said the grounds were deficient, that should have been final, that the board again erred by not giving notice to Baker Hughes that it should substantively respond to these grounds, and then it also erred in permitting the petitioner and a vex to flesh out these challenges that were not sufficiently pled at the pleading requirement. Could I ask you just, your friend on the other side clarified in terms of what claims are affected by what. So if we're talking about exclusively this one combination, which claims, I guess it's just the dependent claims. Claims 2 through 6. The New Stout Zoo Bury. What claims were affected by that? Claims 2 through 6. Importantly for this court is claims 2 through 6 because claims 2 through 6 were only challenged under those obvious misgrounds. Petitioner didn't proffer any anticipation challenges to those claims, so if the board's determination that they were deficient had been upheld, then claims 2 through 6 should be patentable. Any further questions? Okay. Thank you, Ms. Cameron. Thank both counsel for their argument in this case. The case is taken under submission.